The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| JOHN R. CHEATHAM, | ) |
| Debtor. | ) CASE NO. 08-63664 |
| | ) ADV. NO. 09-6034 |
| WILMA CHEATHAM, | ) |
| Plaintiff, | ) JUDGE RUSS KENDIG |
| v. | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT INTENDED FOR** |
| JOHN R. CHEATHAM, | ) **PUBLICATION)** |
| Defendant. | ) |

Now before the Court are Plaintiff and Defendant's cross-motions for summary judgment. Defendant filed his motion on June 18, 2009. Plaintiff filed her motion on June 19, 2009.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the ex-wife of Defendant, the latter of whom is also the debtor in the bankruptcy case under which this adversary proceeding arises. The parties were originally married on June 30, 1979 and divorced in 1987. They remarried on October 23, 1993. On May 8, 2008, the Court of Common Pleas of Wayne County, Ohio (the "state court") entered a decree of divorce ending the second marriage between Plaintiff and Defendant. The state court's decree was based primarily on the report of a magistrate of that same court, which was also entered on May 8, 2008. Defendant filed for bankruptcy under chapter 7 of the Bankruptcy Code on October 31, 2008. An incomplete copy of the magistrate's report has been submitted to the Court as part of Plaintiff's Exhibit A.[1]

The divorce decree assigned certain obligations to Defendant that would later become the subject of the instant adversary proceeding:

> **Real Estate.** Defendant[2] [Wilma J. Cheatham] shall receive her benefit under the trust ownership of the real estate located at 205 N. Kohler Rd., Orrville, Ohio free and clear of any claim of defendant as non marital property. Plaintiff [John R. Cheatham] shall be responsible for the mortgage payment and the home equity line of credit as separate non marital obligations and shall hold defendant harmless. Both parties shall take whatever steps are necessary to remove their names from incurring any further debt on the real estate in trust from the existing mortgage and home equity line of credit. Defendant shall be responsible for all utilities, taxes and insurance due and shall hold plaintiff harmless. Within two years from the journalization date of this Judgment Decree of Divorce, plaintiff shall cause both the mortgage and line of credit to be removed as liability and liens against the real estate.

(Pl.'s Ex. A ¶ 3.) According to the magistrate's report, the balance on the mortgage was $30,749 as of March of 2008, with a monthly payment of $238. The balance on the home equity line of credit was $77,233 as of the time of the magistrate's report, with a monthly payment of $811, for a total of $1,049 per month when added to the mortgage payment. (Magistrate's Report and Proposed Decision 5.) These values are consistent with Defendant's Schedule D, which declares a balance of $74,785.00 on the home equity line of credit and $30,246.00 on the mortgage, both owed to First National Bank of Orrville. Both liens are in Defendant's name only.

The decree also provided a specific provision on spousal support, as follows:

---

[1] Pages 18-27 of the 33-page report have been omitted from the magistrate's report in both copies that Plaintiff has submitted to the Court thus far (once with the complaint, once with her motion for summary judgment). However, the Court finds that all relevant portions have been included.

[2] John Cheatham was the plaintiff and Wilma Cheatham the defendant in the divorce proceeding. The reverse is true in the instant proceeding. When quoting the state court documents directly, this Court uses the designations used by that court.

> **Spousal Support.** Plaintiff [John R. Cheatham] shall pay $250 per month in spousal support to the defendant ... Said spousal support shall continue until the death of either party or the remarriage of the defendant. The Court shall retain jurisdiction over the amount and duration of spousal support and it is the specific intent of this Court to tie the continuing jurisdiction and [sic] to change of circumstances which will definitely include plaintiff's ability to hold defendant harmless on the home line of credit and mortgage payment.

(Pl.'s Ex. A ¶ 18.)

It was known to the magistrate who overheard the case in the state court that Defendant was contemplating filing for bankruptcy relief, dependent on the outcome of the divorce proceeding. (Magistrate's Report 6 and 32.) The magistrate therefore recommended that the state court make it specifically known that the two secured debts in question were to be considered "in the form of support for defendant," and that the magistrate recommended a lower than requested level of spousal support to compensate for Defendant's continuing obligation on the two secured debts. (Id. 32.) The magistrate also recommended that the state court review the spousal support award under its continuing jurisdiction and adjust the required level of support upward "in an amount represented these two monthly obligations" should Defendant file for bankruptcy relief and be discharged on these obligations. Id.

Defendant filed for bankruptcy under chapter 7 of the Bankruptcy Code on October 31, 2008. Plaintiff filed this adversary proceeding on February 26, 2009. Defendant received his discharge on March 4, 2009.

## LEGAL ANALYSIS

### I. Standard of Review

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. That rule provides, in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H.Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a

3

material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party contesting the dischargeability of a debt has the burden of proving the elements of the relevant exception by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991).

## II. Nondischargeability of Debt Under 11 U.S.C. § 523(a)(5)

An award that is designated as support by the state court and that has the indicia of a support obligation is conclusively presumed to be a support obligation by bankruptcy courts in the Sixth Circuit. Sorah v. Sorah (In re Sorah), 163 F.3d 397, 401 (6th Cir. 1998). Under Sorah, these indicia

> include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.

Id. The indicia should also include any others considered by the state's domestic support statute. Id. In this case, however, the second and third universal indicia of a domestic support obligation are clearly absent, and even the first is not unambiguously present. The paragraph specifically dealing with real estate in the divorce decree makes no reference to the burden on Defendant established therein being in the nature of a domestic support obligation; that reference is in the magistrate's recommendation, but not in the actual decree. The Court is convinced that the label should still apply, as the explicit spousal support award in the state court decree does reflect the lower amount that the magistrate recommended in conjunction with assigning the secured debts to Defendant. The words of the state court decree may therefore not explicitly state that it was adopting the magistrate's recommendation, but its numbers do.

However, the second and third universal indicia of support are clearly absent. Defendant's payments on both loans are to First National Bank of Orrville, not to Plaintiff. In addition, nothing in the state court decree suggests that Defendant's obligation on these debts would terminate upon death, remarriage, or eligibility for Social Security benefits. Indeed, Defendant was ordered to obtain the release of both liens within two years from the entry of the divorce decree, regardless of any change in status of either party. This stands in contrast with paragraph 18 of the state court decree, which is explicitly titled "spousal support" and establishes a direct payment obligation that terminates upon the death of either party or the remarriage of Plaintiff.

4

Therefore, the Court finds that Defendant's obligations on the mortgage and home equity line of credit were not in the nature of support obligations; 11 U.S.C. § 523(a)(5) is therefore inapplicable.

### III. Nondischargeability under 11 U.S.C. § 523(a)(15)

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (codified as amended in scattered sections of 11 U.S.C.) ("BAPCPA"), amended 11 U.S.C. § 523(a)(15) to make it more difficult for debtors to discharge debts incurred in divorce proceedings. BAPCPA took effect on October 17, 2005; Defendant's bankruptcy case was filed on October 31, 2008, so this adversary is governed by the amended statute. As amended, that provision provides that a discharge under § 727 does not discharge an individual debtor from any debt

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit ...

11 U.S.C. § 523(a)(15). Prior to BAPCPA, two subparagraphs under this provision rendered it inapplicable (and thus not a bar to dischargeability) if the debtor did not have the ability to pay the debt or if discharging the debt would have resulted in a benefit to the debtor that outweighed the detrimental consequences to the spouse, former spouse, or child that would flow from discharging the debt. 11 U.S.C. § 523(a)(15)(A) and (B) (repealed Oct. 17, 2005). These exceptions no longer apply. A debtor's ability to pay is therefore no longer a factor bankruptcy courts consider when analyzing whether a debt is nondischargeable under § 523(a)(15), and courts no longer engage in any balancing of whether a debtor would gain more than his domestic relations creditors would lose were the debtor granted a discharge.

To prevail on a § 523(a)(15) claim, a plaintiff must establish that (1) the debt in question is to a spouse, former spouse or child of the debtor; (2) the debt is not a support obligation of the type described in § 523(a)(5); and (3) the obligation was incurred in a separation agreement, divorce decree or other order of a court of record. Damschroeder v. Williams (In re Williams), 398 B.R. 464, 468 (Bankr. N.D. Ohio 2008). In this case, Plaintiff can establish the second and third elements, but the first element is somewhat more complicated. Defendant argues that his debt is owed to First National Bank of Orrville, not to Plaintiff, and that therefore he falls outside the reach of § 523(a)(15), requires more serious treatment.

BAPCPA changed the text of § 523(a)(15) itself, in addition to repealing former subparagraphs (A) and (B). Specifically, the requirement that the debt be "to a spouse, former spouse, or child of the debtor ..." was a BAPCPA addition.

5

The Court can find no cases from the Sixth Circuit that address the significance of this addition. The Court has found several post-BAPCPA cases that refer back to the pre-BAPCPA case of Gibson v. Gibson (In re Gibson), 219 B.R. 195 (B.A.P. 6th Cir. 1998). In Gibson, the court rejected the argument that debts owed to third-party creditors are beyond the ambit of § 523(a)(15). In that case, there was a separation agreement, subsequently integrated into the divorce decree, that provided that the debtor would pay a note owed to his non-debtor former wife's stepfather. After the debtor declared bankruptcy, the stepfather sued his stepdaughter for payment on the note; after that, she filed an adversary complaint against her debtor ex-husband. The Bankruptcy Appellate Panel held that the then-current version of § 523(a)(15) excepted the debt from discharge notwithstanding the fact that the debt was payable to a third party and that the separation agreement lacked "hold harmless" or other indemnification language. The Gibson court based this finding on a plain reading of the word "incurred," a word with comparatively broad application, and specifically noted that "[t]he statute does not impose a 'direct pay' requirement." Gibson at 203.

Post-BAPCPA, other courts in this circuit have casually cited Gibson as still good law on this point. See, e.g., Williams, 398 B.R. at 468-69; Johnson v. Johnson (In re Johnson), 2007 WL 3129951 (Bankr. N.D. Ohio Oct. 23, 2007) (also citing a number of pre-BAPCPA cases from bankruptcy courts in other circuits in accord with the holding in Gibson). While both Williams and Johnson incorporated the new language into their elucidations of the test to see if § 523(a)(15) applies (setting it forth as the first element of that test), neither case explicitly acknowledged that the requirement that a debt be "to a spouse, former spouse, or child of the debtor" was a change in the statute from when Gibson was decided, nor considered the implications thereof.

When a bankruptcy case is governed by BAPCPA and a party brings a nondischargeability complaint under § 523(a)(15), it is no longer enough that a debt be "incurred" in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or court order. The party contesting dischargeability must show that the debt was incurred to a spouse, former spouse, or child of the debtor as well.

However, the mere fact that Defendant's debt is *payable* to First National Bank of Orrville still does not mean that the debt is not "to" Plaintiff within the meaning of the Bankruptcy Code. Under the Code, the term "debt" means liability on a "claim." 11 U.S.C. § 101(12). A "claim," in turn, can mean either a right to payment or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. 11 U.S.C. § 101(5). While "federal law governs the ultimate determination of issues raised by [§ 523(a)(15)], an analysis of applicable nonbankruptcy law is a required component of the initial determination of whether a debt has been incurred which satisfies the qualifying language of § 523(a)(15)." Gibson at 203. The validity of a creditor's claim is determined by rules of state law. Grogan, 498 U.S. at 283. Moreover, the Supreme Court uses "the term 'state law' expansively ... to refer to all nonbankruptcy law that creates substantive claims." Id. at n.9.

Therefore, the question this Court asks itself is whether *state* law provides the spouse, former spouse, or child of the debtor with a right or remedy that meets the *federal* definition of a "claim."

6

In this case, it does, because the state court decree contains a hold-harmless provision requiring Defendant to hold Plaintiff harmless on both the home equity line of credit and the mortgage. Courts interpreting Ohio law have found that hold harmless language creates a new obligation from the party holding another harmless to the one held harmless. See Schweitzer v. Schweitzer (In re Schweitzer), 370 B.R. 145, 152 (Bankr. S.D. Ohio 2007). This appears to be the dominant view among the states. See, e.g., Belcher v. Owens (In re Owens), 191 B.R. 669, 673-74 (Bankr. E.D. Ky. 1996) ("hold harmless" language created new indebtedness to nondebtor ex-wife, whereas lack thereof vis-a-vis different obligation in same separation agreement did not); Stegall v. Stegall (In re Stegall), 188 B.R. 597, 598 (Bankr. W.D. Mo. 1995); Shepard v. Shepard (In re Shepard), 2008 WL 5157898, at *2 (Bankr. D.N.M. June 30, 2008); Schuett v. Finkey (In re Finkey), 2008 WL 2165979, at *2 (Bankr. D. Neb. May 21, 2008). Indeed, other courts, including Gibson, have held that a new obligation can arise even without hold harmless language. See, e.g., Gibson at 205.

This Court need not consider the necessity of hold-harmless language in a divorce decree or separation agreement today, as the decree in the instant case contained such language applicable to both debts which Plaintiff asks this court to find nondischargeable. By virtue of that hold harmless language, Plaintiff was given a remedy for breach of performance (i.e., were Defendant to fail to hold Plaintiff harmless) that would give rise to a right to payment. In this case, the state court has gone out of its way to indicate that it stands ready to increase Defendant's domestic support obligations if he fails to hold Plaintiff harmless. This extra effort by the state court was unnecessary but nevertheless welcome, and it is irrelevant that the state court has stated that it stands ready to increase spousal support in response to a failure to abide by a decreed property distribution, or that it labeled something spousal support that was in substance a property division under federal law. Defendant's breach of the state court's hold-harmless provision would give rise to a right to payment (alternatively, Plaintiff could be viewed as having a right to payment contingent on Defendant's breach), which means that Plaintiff has a claim and Defendant has a debt to Plaintiff. The fact that the debt is payable to a third party under these facts is immaterial.

As the debts are to Plaintiff, are not a support obligations (as discussed in Part II), and were incurred in the state court's divorce decree, Plaintiff has established all elements of her § 523(a)(15) count and is entitled to judgment as a matter of law. An order granting Plaintiff's motion for summary judgment, denying Defendant's motion for summary judgment, and finding Defendant's debts to Plaintiff, payable to First National Bank of Orrville, nondischargeable under § 523(a)(15) will be entered concurrently with this opinion.

# # #

7

**Service List:**

Susan K. Sweeney
Community Legal Aid Services, Inc.
The Renkert Building
306 Market Avenue, N
Suite 730
Canton, OH 44702

Wilma Cheatham
205 N. Kohler Rd
Orrville, OH 44667

John R Cheatham
300 Buckeye #L
PO Box 447
Dalton, OH 44618